```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE
```

Jodie Skellie
on behalf of J.D.N.

   v.                                    Case No. 14-cv-00010-PB
                                            Opinion No. 2015 DNH 026

Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration


## MEMORANDUM AND ORDER

Jodie Skellie, on behalf of her minor son, J.D.N., seeks judicial review of a ruling by the Social Security Administration denying her application for supplemental security income ("SSI"). For the reasons set forth below, I deny Skellie's request and affirm the decision of the Commissioner.

## I. BACKGROUND

### A. Stipulated Facts

Pursuant to this court's Local Rule 9.1, the parties have submitted a joint statement of material facts, which is part of the court's record (Doc. No. 18). The facts relevant to the disposition of this matter are discussed below.

**B.     Procedural History**

On April 15, 2011, Skellie applied for SSI on behalf of J.D.N., alleging a disability beginning July 24, 2002, due to attention deficit hyperactivity disorder ("ADHD"), a learning disability, spina bifida occulta, and asthma.  J.D.N. was eight years old at the time the application was filed.  Skellie requested a hearing before an administrative law judge ("ALJ").  On October 10, 2012, Skellie and J.D.N. testified at a hearing before an ALJ.

On October 18, 2012, the ALJ issued an Unfavorable Decision, finding that J.D.N. was not disabled within the meaning of the Social Security Act.  The ALJ followed the sequential three-step process for determining whether a child is disabled.  See 20 C.F.R. § 416.924.  First, she determined that J.D.N. was not engaged in substantial gainful activity.  Second, she found that he had the following severe impairments: "attention deficit hyperactivity disorder, learning disability, spina bifida occulta with chronic constipation, and asthma."  Tr. at 15.  Third, the ALJ found that J.D.N. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1.  Accordingly, she concluded that J.D.N. was not disabled.  On November 7, 2013, the Appeals Council denied Skellie's request for review of the ALJ's decision.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  My review "is limited to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence."  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  Findings of fact made by the ALJ are accorded deference as long as they are supported by substantial evidence.  Id.  Substantial evidence to support factual findings exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'"  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  If the

substantial evidence standard is met, factual findings are conclusive even if the record "arguably could support a different conclusion." Id. at 770. Findings are not conclusive, however, if they are derived by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record. Irlanda Ortiz, 955 F.2d at 769. It is the role of the ALJ, not the court, to resolve conflicts in the evidence. Id.

### III.   ANALYSIS

Skellie contends that the ALJ erred by finding that J.D.N.'s ADHD (1) does not meet a listed impairment, (2) does not medically equal a listed impairment, and (3) does not functionally equal a listed impairment.

**A.   Entitlement to Children's Disability Benefits**

With respect to children, the Social Security Act provides:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected

4

to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

To evaluate whether a child is entitled to SSI benefits, an ALJ engages in a three-part inquiry that largely mirrors the first three questions of the five-part inquiry for adults: (1) whether the child is engaged in substantial gainful activity, (2) if not, whether the child has a medically determinable impairment that is severe, and (3) whether the impairment meets, medically equals, or functionally equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations.  See 20 C.F.R. § 416.924(b)-(d).

At the third step, if the ALJ finds that the child's impairment does not meet or medically equal a listed impairment, the ALJ must determine whether the child's impairment functionally equals a listed impairment.  See 20 C.F.R. § 416.924(d).  To determine functional equivalence, the ALJ considers the child's functioning in six "domains": "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being."  20 C.F.R. §

416.926a(b)(1). An impairment "functionally equal[s] the listings" if it results in "marked" limitations in at least two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

### B. Does J.D.N.'s impairment meet or medically equal a listed impairment?

Skellie contends that the ALJ erred in determining that J.D.N.'s impairment did not meet or medically equal a listed impairment. She focuses her arguments on Listing 112.11, which describes ADHD.

#### 1. Listing 112.11: ADHD

With respect to a child (like J.D.N.), Listing 112.11 requires a marked degree of inattention, impulsiveness, and hyperactivity as well as a marked impairment in age-appropriate function in at least two of the following categories: (a) cognitive/communicative function, (b) social functioning, (c) personal functioning, and (d) maintaining concentration, persistence, or pace. 20 C.F.R. pt. 404, subpt. P, app'x 1, pt. B, ¶¶ 112.02, 112.11. "Marked" means "more than moderate but less than extreme." Id. ¶ 112.00(C).

#### 2. The ALJ's Decision

The ALJ determined that J.D.N.'s impairment did not meet or

6

medically equal Listing 112.11.[1] Tr. at 15. The ALJ found that since November 2010, when J.D.N. was prescribed Concerta to treat his ADHD, his symptoms abated.[2] Tr. at 17-18. She pointed to Skellie's own reports in December 2010 that J.D.N. was doing "absolutely great" on his medication and that the medication was the "missing piece." Tr. at 17-18 (quoting Tr. at 316). The ALJ also relied on January 2011 office notes from Dr. Erin Jackson, which noted that J.D.N. had improved in school and "had been able to focus easier and had fewer interruptions in class." Tr. at 18 (citing Tr. at 317). Similarly, she noted that J.D.N. experienced "less active and . . . impulsive behavior" at home. Tr. at 18 (citing Tr. at 317).

---

[1] The ALJ summarily stated that J.D.N.'s impairments did not meet or medically equal a listed impairment without further discussion under that heading. Tr. at 15. Skellie does not argue that the findings must be reported directly under a specific heading and I am not aware of any regulation requiring it. I find that the ALJ's finding is supported by substantial evidence in another part of her decision. See Tr. at 17-18; see also Fiske v. Astrue, No. 10-40059-TSH, 2012 WL 1065480, at *9 (D. Mass. Mar. 27, 2012)("[T]he focus must be on whether there exists substantial evidence in the decision as a whole for the step three determination.").

[2] The ALJ stated that J.D.N. began taking Concerta in October 2010, but the record shows and the parties agree that he was prescribed Concerta on November 16, 2010. Doc. No. 18 at 9 (citing Tr. at 589, 591).

3. <u>Does J.D.N.'s impairment "meet" a listed impairment?</u>

To meet a listed impairment, the claimant must show that the impairment matches each of the listed medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id.

Skellie contends that the ALJ erred in finding that J.D.N.'s impairments did not "meet" Listing 112.11 because she ignored four categories of evidence: (1) the diagnoses of ADHD by J.D.N.'s treating therapist, treating psychiatrist, and treating physician; (2) Skellie's reports about J.D.N.'s behavior; (3) treatment notes describing J.D.N.'s behavior; and (4) assessments completed by J.D.N.'s treating therapist, Iphigenia Hatt. Doc. No. 14-1 at 9-10, 12, 14-15. I disagree with each argument.

First, a diagnosis of ADHD is insufficient to show that J.D.N. met the listing for ADHD. The regulations state that an impairment "cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria of the listing." 20 C.F.R. § 416.925(d); see

Batista-Canales v. Sec'y of Health & Human Servs., 39 F.3d 1166, No. 94-1638, 1994 WL 631647, at *2 (1st Cir. Nov. 10, 1994) (table opinion) ("The diagnosis of bronchial asthma standing by itself is insufficient to establish claimant's entitlement to disability benefits."). Moreover, in this case, the ALJ determined that after the diagnosis, J.D.N.'s symptoms abated with the use of medication. Tr. at 17-18; see 20 C.F.R. § 416.924a(b)(9)(i) (the ALJ may consider the effects of medications on symptoms).

Second, Skellie's reports to doctors about J.D.N.'s behavioral issues do not undermine the ALJ's conclusion. Skellie points to various pieces of evidence in an apparent effort to demonstrate the facts that the ALJ allegedly ignored. Doc. No. 14-1 at 10-15. Much of the evidence that she highlights, however, describes J.D.N.'s symptoms before he was prescribed Concerta on November 16, 2010, and therefore is consistent with the ALJ's finding that J.D.N.'s behavior improved after he was prescribed Concerta. See Tr. at 359-64, 379, 413, 414, 589-91. With respect to post-prescription reports, Skellie points to various occasions during the spring of 2011 when she reported to Ms. Hatt that J.D.N. was

inattentive or having trouble following directions. Doc. No. 14-1 at 12-14 (citing Tr. at 380, 381, 383, 385, 393, 395, 400, 405). Skellie does not articulate, however, how these reports demonstrate the "marked" levels of inattention, impulsiveness, and hyperactivity necessary to meet Listing 112.11. See Young v. Colvin, 2014 DNH 035, 10-11 (finding substantial evidence supported the ALJ's conclusion that a child's condition did not meet a listed impairment where, "[a]side from simply summarizing [the child's] medical history, [the claimant] failed to point to specific evidence that meets the [listed criteria]"). Moreover, on each of those occasions, Ms. Hatt noted that J.D.N.'s relative changes in "Mood/Affect," "Thought Process/Orientation," and "Behavior/Functioning" were "Unremarkable," except for one occasion on which she did not assess his condition. See Tr. at 380, 381, 383, 385, 393, 395, 400, 405.

Third, treatment notes describing J.D.N.'s behavior similarly do not undermine the ALJ's conclusion. Like Skellie's reports, most of the treatment notes to which Skellie points describe symptoms before J.D.N. was prescribed Concerta and therefore they are consistent with the ALJ's finding that

J.D.N.'s behavior improved with medication.  See Tr. at 414-15, 417-20, 422, 424-25, 427-29, 431, 438-41, 444, 447, 452, 455, 457, 548-49.  The remaining treatment notes consist of eleven pages, which are handwritten and difficult to decipher.  See Tr. at 392-402.  Contrary to Skellie's assertions, these pages largely support the ALJ's finding that J.D.N.'s behavior improved with medication.  See, e.g., Tr. at 392 ("[J.D.N.] is following direction [with] more frequency. . . ."), 399 ("[M]edication is working well."), 400 ("[J.D.N.] has demonstrated consistent improvement in school.  He has brought four of his academic grades up [from] needs improvement to satisfactory progress.")  Even the passages that support Skellie's contentions fail to demonstrate the "marked" levels of inattention, impulsiveness, and hyperactivity necessary to meet Listing 112.11.  See, e.g., Tr. at 395 ("[J.D.N.] is not very cooperative [or] following directions currently.  He is not being very attentive."), 400 ("Transitions are difficult for [J.D.N.] and boundary issues and issues of appropriate behaviors. . . come into effect.").  Accordingly, these treatment notes do not undermine the ALJ's finding.

Fourth, Ms. Hatt's January 2010 and January 2011 assessments of J.D.N. also do not undermine the ALJ's conclusion.  In January 2010, Ms. Hatt completed an assessment noting J.D.N.'s anxiety, distractability, hyperactivity, and impulsiveness.  See Tr. at 359.  This assessment is consistent with the ALJ's finding that J.D.N.'s behavior only improved after he was prescribed Concerta in November 2010.  See Tr. at 17-18.  Skellie also points to Ms. Hatt's January 2011 assessment, in which Ms. Hatt checked the boxes to indicate that J.D.N. suffered from the following relevant symptoms: "Aggression, physical," "Aggression, verbal," "Angry outbursts," "Anxiety," "Distractibility," "Hyperactive," "Impulsive," "Interpersonal problems," "Self-esteem, low."  Doc. No. 14-1 at 13 (citing Tr. at 365-70).  I agree with Skellie that this evidence supports her contention and also that the ALJ did not discuss this assessment in her opinion.  Nonetheless, the ALJ supported her conclusion with substantial evidence showing that J.D.N.'s behavior had in fact improved by the time of the January 2011 assessment.  See Tr. at 17-18.  Accordingly, because remand is not necessary "if it will amount to no more than an empty exercise," I do not find the ALJ's failure to

discuss this assessment to require remand.  See Ward, 211 F.3d at 656.

> 4. Does J.D.N.'s impairment "medically equal" the listings?

An impairment "medically equals" a listing if "it is at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 416.926(a); see Young v. Colvin, 2014 DNH 035, 9-10.  The ALJ is responsible for determining whether an impairment medically equals a listed impairment.  SSR 96-6p, 1996 WL 374180, at * 3 (July 2, 1996).  According to Social Security Ruling 96-6p, "longstanding policy" requires the ALJ to obtain evidence from a state agency physician or psychologist on the issue of equivalence and assign that expert opinion evidence appropriate weight.  Id.  Ultimately, however, the ALJ is not bound by a finding of a medical or psychological consultant.  Id.

In some circumstances, the ALJ is required to obtain an updated medical opinion from a medical expert.  Id.  Specifically, an update is required "[w]hen additional medical evidence is received that in the opinion of the [ALJ] may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any

13

impairment in the Listing of Impairments." Id. at *4.  That is, the ALJ retains discretion to determine whether newly-acquired evidence would change the State agency consultant's opinion.  See id.

Here, the ALJ concluded that J.D.N. did not have an impairment or combination of impairments that medically equaled a listed impairment.  Tr. at 15.  The ALJ relied on the May 31, 2011 evaluations of State agency medical consultant Dr. Diana Dorsey and State agency psychological consultant Dr. Michael Schneider.  See Tr. at 23.  They both reviewed the available evidence in the record at the time.  Doc. No. 18 at 6.  Dr. Schneider and Dr. Dorsey opined that J.D.N.'s mental and physical impairments did not meet or medically equal a listed impairment.  Tr. at 54.  With respect to functional equivalence, neither doctor opined that J.D.N. had more than a "less than marked" limitation in any of the six domains.  Tr. at 55-56.  Invoking Social Security Ruling 96-6p, the ALJ accorded these opinions "great weight."  Tr. at 23.

Skellie contends that the ALJ erred because she did not require the medical consultants to update their opinions.  Doc. No. 14-1 at 16.  She lists several exhibits that contain

14

evidence that post-date May 31, 2011, but she does not identify a single piece of evidence in those exhibits that undermine the ALJ's decision not to update the expert opinions. Id. at 16-17. Accordingly, I find that the ALJ did not err in relying on Dr. Dorsey and Dr. Schneider's May 2011 opinions.

**C.   Does J.D.N.'s impairment "functionally equal" the listings?**

If an ALJ determines that a child's impairments do not meet or medically equal a listed impairment, the ALJ must then evaluate whether the impairments nonetheless functionally equal the listings. 20 C.F.R. § 416.926a(a). To demonstrate functional equivalence, the child must have a marked limitation in two functional domains or an extreme limitation in one functional domain. Id.

Here, the ALJ found that J.D.N.'s impairments did not functionally equal the listings. Tr. at 15. Specifically, she found that J.D.N. had "less than marked" limitation in five of six domains and "no limitation" in the remaining domain. Tr. at 18-23.

Skellie argues that it was error for the ALJ to find that J.D.N. did not have marked impairments in the domains of (1) acquiring and using information, (2) interacting and relating to

others, and (3) caring for oneself.  Because Skellie merely recites factual information that supports her version of the story rather than addressing any errors in the ALJ's findings, I disagree with each of her contentions.  See Irlanda Ortiz, 955 F.2d at 769.

First, Skellie contends that the ALJ erred in finding that J.D.N. has a less than marked limitation in acquiring and using information.  See Doc. No. 14-1 at 18-19.  In support of her argument, she points to J.D.N.'s scores on the "Weschler Intelligence Scale for Children – IV" and the comments of school psychologist Cheryl Gamble related to that testing.  See id.  Instead of showing that the ALJ's finding was not supported by substantial evidence, however, the test results largely support the ALJ's finding.  For example, Skellie notes that the tests show that J.D.N.'s "general cognitive ability is Average" and that "[h]is ability in processing simple or routine visual material w/o error is Average."  Id. at 18.  Rather than undermining the ALJ's decision, these test results reinforce that J.D.N. did not have a marked limitation in acquiring and using information.

Second, Skellie argues that the ALJ's finding that J.D.N.

16

had a less than marked limitation in "interacting and relating to others" was error. See id. at 19. In support of this argument, she points to his Individualized Education Plan, which notes that J.D.N. meets the reading level expectation for the end of first grade, but does not meet the expectation for the end of second grade. Id. (citing Tr. at 146). The domain of interacting and relating to others "consider[s] how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). Whatever relation J.D.N.'s reading ability may have to this domain, Skellie has failed to articulate it. Therefore, Skellie has not shown that the ALJ erred in finding a less than marked limitation in interacting and relating with others.

Third, Skellie contends that the ALJ erred in finding that J.D.N. had a less than marked limitation in his ability to care for himself. See Doc. No. 14-1 at 19. To support this contention, Skellie argues that the ALJ "neglected to include her testimony regarding [J.D.N.'s] lack of awareness of how he angers his peers and gets himself into trouble and fights." Id.

17

Despite this argument, an ALJ need not discuss every piece of evidence in the record when the finding is otherwise supported by substantial evidence.  See Rodriguez v. Sec'y of Health & Human Servs., No. 90-1039, 1990 WL 152336, at *1 (1st Cir. Sept. 11, 1990); Lord v. Apfel, 114 F. Supp. 2d 3, 13 (D.N.H. 2000).

## IV. CONCLUSION

For the foregoing reasons, I grant the Commissioner's motion to affirm (Doc. No. 17) and deny Skellie's motion to reverse (Doc. No. 14).  The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

February 27, 2015

cc:   Judith E. Gola
      T. David Plourde